UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

ROBERT EARL PIERCE                                              PLAINTIFF

VS.                                        CIVIL ACTION NO. 4:05CV75LN

THE CLARION LEDGER, GANNETT RIVER
STATES PUBLISHING CORPORATION,
GANNETT COMPANY, INC., ANA RADELAT
AND GRACE FISHER SIMMONS                                       DEFENDANTS

MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendants Gannett River States Publishing Corporation and Gannett Company, Inc. (Gannett), and Ana Radelat and Grace Simmons Fisher for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Robert Earl Pierce has responded to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that defendants' motion is well taken and should be granted.[1]

---

[1] On November 9, 2004, plaintiff, with leave of court, filed an amended complaint adding a breach of contract claim against defendants Gannett and Radelat. Soon thereafter, an order was entered staying the case pending a ruling on the summary judgment motion. Defendants have since moved to lift the stay to allow them to file a summary judgment motion as to the breach of contract claim, which they seem to suggest should be considered alongside this summary judgment motion. The court, however, perceives no reason to postpone ruling on the present motion, and the fact that it does so now essentially renders moot the motion to lift the stay so that they may file a separate summary judgment motion. That separate motion will be deemed filed as of this date

Plaintiff Robert Earl Pierce filed this lawsuit on March 30, 2005, alleging claims for negligent infliction of emotional distress, invasion of privacy and libel and seeking damages on account of a defamatory article about him in the April 18, 2003 edition of *The Clarion Ledger* newspaper. The article, which was written by defendant Ana Radalet, a reporter with The Clarion Ledger's Bureau in Washington, D.C.,[2] described allegations in an internal memo prepared by Mississippi Bureau of Narcotics (MBN) agent Roy Sandefer and directed to then-director of the MBN, Frank Melton. Among other things, the Sandefer memo described Sandefer's interview of a confidential source who reported to Sandefer that Pierce, a former MBN official, had arranged the transfer of two state-owned planes, valued at $1 million, to the Gulf Coast area, one to the Harrison County Sheriff's Department and the other to the Hancock County Port Authority, for the personal use of a top aide to Senator Trent Lott. The Sandefer memo recited that Pierce had arranged the transfer to garner political influence so that he could secure appointment as head of the federal drug program in Mississippi, a position which he did subsequently receive. It also recited that Pierce had given away

---

and plaintiff's response thereto (even if pursuant to Rule 56(f) rather than on the merits) will be due ten days from this date, as calculated under Federal Rule of Civil Procedure 6.

   [2]   The court notes that there is some dispute as to whether Radelat is a reporter for *The Clarion Ledger* or is a reporter for Gannett Company, which owns *The Clarion Ledger*.

2

weapons that were confiscated during MBN raids.  Radelat's article described the contents of the Sandefer memo, reported that the MBN had referred the matters addressed in the memo to the state auditor for further review, and recited that Pierce had been contacted and denied the allegations against him.

Soon after the article was published, on April 30, 2003, Pierce filed a lawsuit in the Circuit Court of Lauderdale County, Mississippi, against Frank Melton and against Warren Buchanan, seeking damages for their alleged negligent and/or intentional infliction of emotional distress.  Therein, Pierce claimed that Melton had intentionally leaked the Sandefer memo to the press, and to Ana Radelat, in particular, knowing the allegations in the report were false, or at the very least without first corroborating any of the information therein or investigating the credibility of the "so called 'confidential informant.'"  The suit further charged that Buchanan was the alleged "confidential source" referenced in the Sandefer memo, and that he had intentionally fabricated the allegations in the memo for the purpose of embarrassing Pierce and damaging his reputation.

In addition to filing that lawsuit, Pierce, by letters from his counsel dated May 1 and May 8, demanded a retraction by *The Clarion Ledger*.  Ultimately, the Clarion Ledger declined, taking the position in a letter from its attorney that the story in question was privileged, as

3

> a fair report of an official proceeding in which the
> Mississippi Bureau of Narcotics has asked the state
> auditor's office to investigate certain allegations
> against Earl Pierce . . . Your clients are public
> officials and the allegations involve misconduct in
> public office. The article reports your clients'
> denials that the allegations are true. The points you
> make in your letter do not conclusively establish that
> the allegations are untrue.

Plaintiff and his-then attorney obviously decided not to further pursue the matter with *The Clarion Ledger* at that time, and yet nearly two years later, after getting a new attorney, filed the present action.

In their motion, defendants contend that plaintiff's claims for libel and invasion of privacy are time-barred by the one-year limitations period of Mississippi Code Annotated § 15-1-35, which states:

> All actions for assault, assault and battery, maiming,
> false imprisonment, malicious arrest, or menace, and all
> actions for slanderous words concerning the person or
> title, for failure to employ, and for libels, shall be
> commenced within one (1) year next after the cause of
> such action accrued, and not after.

It is undisputed that plaintiff's cause of action for libel is governed by this one-year limitations period. And, while plaintiff contends otherwise, it is also manifest to the court that his invasion of privacy claim is likewise subject to this one-year limitations period. See Young v. Jackson, 572 So.2d 378, 382 (Miss. 1990) ("[T]he one-year statute of limitations applies

4

in invasion of privacy actions, the same as in actions for libel or slander.").[3]

Despite the Mississippi Supreme Court's pronouncement on the issue in Young, plaintiff argues at length that there has never been a definitive decision by the Mississippi state courts on the question whether invasion of privacy is governed by the one-year limitations period, arguing primarily that the court's statement in Young was not only dictum, but dictum that was based on a "miscite" to a previous case, City of Mound Bayou v. Johnson, 562 So. 2d 1212 (Miss. 1990). In Hervey v. MetLife General Ins. Corp. System Agency of Mississippi, Inc., 154 F. Supp. 2d 909, 916 (S.D. Miss. 2001), this court addressed Young, and concluded that "the

---

[3] See also Tichenor v. Roman Catholic Church of Archdiocese of New Orleans, 32 F.3d 953, 961 (5th Cir. 1994) (recognizing that under Mississippi law, "the tort of invasion of privacy has been held subject to the one-year statute"); Windham v. Cardinal Health, Inc., 2006 WL 51185, at 9 (S.D. Miss. Jan. 6, 2006) (applying one-year limitations period to claim for invasion of privacy); Lane v. Strang Communications Co., 297 F. Supp. 2d 897, 899 (N.D. Miss. 2003) (stating that "claims for invasion of privacy . . . are also subject to a one year limitations period."); Disney v. Horton, 2000 WL 1089930, *3 (N.D. Miss. 2000) (stating that "the statute of limitations for . . . invasion of privacy provides that the claim must be brought within one year of the occurrence"); Malloy v. Sears, Roebuck and Co., 1997 WL 170313, at 2 (N.D. Miss. 1997) (observing that "the law in Mississippi clearly recognizes that the one year statute of limitations applies in invasion of privacy actions"); Campbell v. Jackson Business Forms Co., 841 F. Supp. 772, 774 (S.D. Miss. 1994) (holding that the "one-year statute of limitations set forth in Miss. Code Ann. § 15-1-35 applies to common-law invasion of privacy claims"); Watkins v. United Parcel Service, Inc., 797 F. Supp. 1349, 1360 (S.D. Miss. 1992) (stating that "[a]n action based on an invasion of privacy has a one year statute of limitations.").

Mississippi Supreme Court considers that in . . . footnote 7 [of City of Mound Bayou], it was, in fact, "recogniz[ing] that the one-year statute of limitations applies in invasion of privacy actions." From this court's perspective, Young is a definitive ruling on this issue.

The court would note, though, that even were that not the case, and there were not a definitive ruling on this issue by the state's highest court, it certainly would not necessarily follow, as plaintiff evidently assumes, that the three-year residual limitations period of Mississippi Code Annotated § 15-1-49 would apply. There is no justification for such an analytical leap. Rather, the determination of which statute of limitations applies would depend on whether or not invasion of privacy is "of a type" or in a category of a tort enumerated in the one-year limitations statute. See Hervey v. Metlife General Ins. Corp., 147 F. Supp. 2d 517, 914 (S.D. Miss. 2001) (citations omitted). And, the fact is, the reason the courts, or the majority of them, have concluded that invasion of privacy is covered by § 15-1-35 notwithstanding that it is not expressly included therein, is that it is a tort of a similar type to those enumerated in the statute. This court likewise considers that to be the case. Moreover, it cannot be overlooked that this court's charge, when state law is unclear, is to Erie-guess how the Mississippi Supreme Court would rule on the issue; and even if there were ambiguity on the issue, in view of

6

Young, this court would be hard pressed to reach any conclusion other than that the Mississippi Supreme Court would likely conclude that invasion of privacy is governed by the one-year limitations period.

"Generally, an action for libel or defamation," and for invasion of privacy based thereon, "accrues at the time of the first publication for public consumption." McCorkle v. McCorkle 811 So. 2d 258, 265 (Miss. Ct. App. 2001) (citing Forman v. Mississippi Publishers Corp., 195 Miss. 90, 107, 14 So. 2d 344, 347 (1943)). The Mississippi Supreme Court has adopted a "discovery rule" for a "limited class of libel cases" in which, "because of the secretive or inherently undiscoverable nature of the publication the plaintiff did not know, or with reasonable diligence could not have discovered, that he had been defamed." Staheli v. Smith, 548 So. 2d 1299, 1303 (Miss. 1989). The court in Staheli reasoned that "the general policies underlying the statute of limitations would not be thwarted by adoption of the discovery rule" because "[i]n such rare instances, . . . a plaintiff can[not] be accused of sleeping on his rights." Id. This case manifestly does not fall within that "limited class of cases" for which a discovery rule applies.

The Supreme Court made clear in Staheli and succeeding cases that the libel discovery rule only applies in the "rare" libel case in which the plaintiff, because of the "secret or inherently

7

undiscoverable nature of the publication," does not know, and cannot reasonably know, that he has been defamed. Here, there was nothing secret or inherently undiscoverable about the article at issue, and plaintiff certainly does not claim to have been unaware that he had been defamed by the article at the time it was published.[4] On the contrary, he admittedly knew both about the article and that it was defamatory, and claims only that he did not know that the publication may not have been privileged. There is thus no basis for applying a discovery rule.

The court would observe, though, that even if a discovery rule were arguably applicable in such a setting, it would not operate <u>in this case</u> to avoid the limitations bar. The intent of the discovery rule is to protect potential plaintiffs who cannot, through reasonable diligence, discover injuries done to them. <u>Wayne General Hosp. v. Hayes</u>, 868 So. 2d 997, 1001 (Miss. 2004). The Supreme Court has thus consistently held that a plaintiff seeking to avail himself of the tolling provided by the discovery rule must show that he "exercise[d] reasonable diligence in determining whether an injury suffered is actionable." <u>Blailock ex rel. Blailock v. Hubbs</u>, 2005 WL 1385214, at 2 (Miss. Ct. App. 2005). <u>See, e.g.</u>, <u>Wright v. Quesnel</u>, 876 So. 2d 362, 366 (Miss. 2004) ("But to benefit from the discovery rule, a plaintiff must

---

[4] Indeed, the fact that his lawyers promptly wrote to demand retraction would foreclose such an assertion.

8

be reasonably diligent in investigating her injuries."); Punzo v. Jackson County, 861 So. 2d 340, 349 (Miss. 2003) ("To claim benefit of the discovery rule, a plaintiff must be reasonably diligent in investigating the circumstances surrounding the injury.").

Elaborating on this requirement of reasonable diligence, the Fifth Circuit in First Trust National Association v. First National Bank of Commerce, stated:

> The would-be plaintiff need not have become absolutely certain that he had a cause of action; he need merely be on notice-or *should* be-that he should carefully investigate the materials that suggest that a cause probably or potentially exists. Neither need the plaintiff know *with precision* each detail of breach, causation, and damages, but merely enough to make a plain statement of the case backed by evidence sufficient to survive a summary judgment motion.
>
> The [Mississippi Supreme Court] court [has] explained that
>> The plaintiffs need not have actual knowledge of the facts before the duty of due diligence arises; rather, knowledge of certain facts which are "calculated to excite inquiry" give rise to the duty to inquire. The statute of limitations begins to run once plaintiffs are on inquiry that a potential claim exists.

220 F.3d 331, 337 (5th Cir. 2000) (citing Smith v. Sanders, 485 So. 2d 1051, 1052 (Miss. 1986)).

Here, plaintiff cannot possibly show that he exercised reasonable diligence to discover his claims against defendants herein. As explained in plaintiff's response brief, the sole basis for his reliance on the discovery rule is this: In February

9

2005, as part of becoming familiar with the facts of Pierce's claims against Melton and Buchanan, Pierce's new attorney telephoned Radelat to gather information about the case. In that conversation, in updating Radalat on the case, the attorney reported that Buchanan had denied he was the confidential source referenced in the Sandefer memo. Radelat blurted out, completedly unexpectedly and obviously unintentionally, that Buchanan had been her confidential source. Only then, claims plaintiff, did his attorney realize that perhaps Radalat had been more involved than had previously been thought and that perhaps the April 18th article was not protected by any privilege, as The Clarion Ledger had claimed in response to his retraction demand.

As defendants aptly note in their rebuttal memorandum, however, plaintiff has offered no explanation why his attorney made no attempt to interview Radelat prior to expiration of the limitations period, and indeed why that was not done until nearly two years after plaintiff had filed his lawsuit against Frank Melton. Nor does plaintiff explain why his attorney did not depose Warren Buchanan prior to October 2004, or why he did not depose Melton himself until September 2005, nearly two-and-a-half years after he sued Melton.[5] By no means can plaintiff's actions

---

[5] The court does recognize that Buchanan denied he was the source of the statements, and that Melton initially denied that he provided the Sandefer memo to Radelat, yet plaintiff did not believe them and continued to pursue claims against them.

10

(or inaction) be characterized as reasonably diligent. Accordingly, the statute of limitations was not tolled and had run long before he filed this lawsuit.

In addition to his claims for libel and invasion of privacy, plaintiff asserts a claim for negligent infliction of emotional distress based on his charge that defendants "negligently inflicted emotional and mental distress upon him by publishing false and defamatory allegations about him in a negligent and reckless disregard for the truth of those allegations." Defendants submit that despite plaintiff's labeling the challenged conduct as negligence, in a transparent attempt to avoid the limitations bar, this claim is really for <u>intentional</u> infliction of emotional distress, based, as it is, on his charge that defendants maliciously published false and defamatory statements concerning him.  They maintain that this claim is time-barred by the one-year limitations period of § 15-1-35, just as are his other claims.

Pleading in the alternative is permissible, and thus, plaintiff may properly allege that conduct was either intentional or, in the alternative, negligent.  The court is thus not persuaded that defendants' statute of limitations argument necessarily disposes of this claim.  However, the court does find merit in defendants' alternative argument, namely, that no cause of action exists under Mississippi law for negligent infliction of

11

emotional distress arising from non-commercial speech. See Mitchell v. Random House, Inc., 865 F.2d 664, 672 (5th Cir. 1989) ("There is no Mississippi precedent to support [a] claim for negligent infliction of emotional distress based upon a written noncommercial publication. We will not create this tort for Mississippi."); Lane v. Strang Communications Co., 297 F. Supp. 2d at 899 n.1 (finding that "Mississippi law does not recognize a cause of action for negligent infliction of emotional distress based on defamation"). For that reason, plaintiff has stated no claim for negligent infliction of emotional distress.[6]

Plaintiff's complaint alleges a claim against Grace Simmons Fisher, who, like plaintiff, is a Mississippi citizen. Defendants removed this case in April 2005 based on diversity of citizenship, taking the position that although Fisher and plaintiff are not of diverse citizenship, Fisher was fraudulently joined to defeat federal jurisdiction. Plaintiff has never moved to remand the case, but in response to defendants' summary judgment motion, maintains that he has asserted viable claims against her.[7]

---

[6] The court rejects plaintiff's suggestion that this court not adhere to the holding in Mitchell because this aspect of the Mitchell decision is not well grounded.

[7] The court notes that in the final sentence of the final paragraph of a "Supplemental Response to Defendants' Motion for Summary Judgment, filed by plaintiff without leave of court and after briefing on the summary judgment motion had closed, plaintiff, for the first time, stated that this court should remand the case to state court.
Defendants have moved to strike this supplement as having

Case 4:05-cv-00075-TSL-JMR   Document 73   Filed 01/19/2006   Page 13 of 16

Defendants obviously contend otherwise, and, for the apparent purpose of satisfying the dictates of <u>Smallwood v. Illinois Cent. R.R. Co.</u>, 385 F.3d 568 (5th Cir. 2004) (en banc) cert. denied, --- U.S. ----, 125 S. Ct. 1825, 161 L. Ed. 2d 755 (2005),[8] have argued in their summary judgment motion that there exist grounds for dismissal of Fisher independent of the grounds urged for dismissal of the other defendants. Specifically, they argue that Fisher, like the other defendants, is entitled to be dismissed because the statute of limitations bars plaintiff's claims for libel and invasion of privacy, and because plaintiff's putative negligent infliction of emotional distress claim is not actionable under applicable law, but that she is also entitled to be

---

been filed without authorization and as improper surrebuttal. Although they are correct that leave should first have been sought, they are not correct that the subject covered by that supplement is not proper for surrebuttal.

    Plaintiff has also filed a motion to file a second supplement to include deposition testimony from Radelat, which was received only after briefing on the motion had closed. Defendants oppose the motion, insisting that the matters covered therein are essentially irrelevant. The court tends to agree, but in its discretion will nevertheless permit filing of the supplement.

    [8]  The court in <u>Smallwood</u> adopted a "common defense" rule, holding that improper joinder of a resident defendant will not be found "where the allegation of improper joinder rests only on a showing that there is no reasonable basis for predicting that state law would allow recovery against the in-state defendant and that showing is equally dispositive of all defendants." 385 F.3d 568, at 575. Defendants here have offered a defense as to Fisher that is not common to the defenses of her co-defendants.

dismissed because there are no facts to support the imposition of liability against her, so that she was improperly joined.

As defendants note, in his complaint, plaintiff charges that Fisher edited and approved the subject article authored by Radelat, and that she is thus liable for intentionally or negligently causing and/or allowing publication of the defamatory article. In their motion, defendants maintain that Fisher cannot be held liable because, contrary to plaintiff's allegations, she had no substantive involvement in publication of the story: She did not write it, did not edit it and did not make the decision to publish it and thus cannot be held accountable for its publication.

There is nothing in the record to support the allegation that Fisher was involved in editing the subject article. There is no dispute that in general, Radelat did have regular contact with Radelat concerning things Radelat was working on, and that Radelat did speak with Fisher about this article, in particular, as it was being written on April 17, 2003. However, those conversations did not relate to the specific content of the article. It is further clear from the proof that Fisher, in fact, had no role in writing or editing the article, and she, in fact, knew nothing more about the contents of the Sandefer memo and the article based thereon than what appeared in the memo and article. Perhaps most pertinently, although the proof does show that Fisher participated

14

in the decision to publish the article, there is no proof to suggest that at the time she did so, she knew or had reason to know that the allegations in the Sandefer memo were unsubstantiated or unproven.

In this regard, Frank Melton testified in his deposition that not long after he faxed a copy of the Sandefer memo to Radelat, he received a call from Fisher, who was "fussing" at him for not sending the Sandefer memo to *The Clarion Ledger*. According to Melton, he was taken aback, because prior to this conversation, he had no idea that Radelat had any connection to *The Clarion Ledger*. Melton testified that immediately after hanging up with Fisher, he telephoned Ron Agnew, editor of *The Clarion Ledger*, and told Agnew that he had issued some information to one of the paper's reporters under confidentiality, with an understanding that it would not be printed, and that the reporter, who knew that the information he had provided was unproven and unsubstantiated, had violated that privilege. Melton testified, though, that he did not share this information with Fisher. He told her only that the memo was not to be published, but apparently gave her no reason. He did not tell her he was the one who had provided the memo to Radelat (though Fisher had assumed he was), and thus certainly did not tell her that the memo had been furnished to Radelat with an understanding that the allegations therein were unsubstantiated

15

and that it was not to be published; and he did not tell her that the allegations in the memo were unproven or unsubstantiated. Plaintiff appears to suggest that Fisher could possibly be held liable for failing to ensure that the article was substantiated prior to approving it for publication. However, Fisher has testified without contradiction that although she knew, based on her conversations with Radelat, that the article would be coming over the GNS wire service, she had no role in preparing the article and "relied on Ana and her editors," for Radelat, she explained, worked under editors in Washington, D.C., whose responsibility it was to ensure the integrity of the articles released by them for publication over the GNS wire service. For this reason, plaintiff has no basis for any claim against Fisher and she is not a proper party hereto.

Based on the foregoing, it is ordered that the present motion for summary judgment is granted as to all defendants. It is further ordered that plaintiff's response to the second summary judgment motion, directed to the breach of contract claim, is due ten days from the entry hereof.

SO ORDERED this 19th day of January, 2006.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE